Good morning, Your Honors. May it please the Court, Enrique Gallardo for the Commissioners of the California Public Utilities Commission, or the CPUC. I'd like to reserve four minutes for rebuttal. Neither Congress nor the FCC has preempted the CPUC's methodology for determining state surcharges on prepaid wireless services, including the CPUC's use of the intrastate allocation factor to remove interstate revenues and other revenues from its assessment. Now, to address the issue of preemption, MetroPCS relies on an argument that federal intrastate revenues and California's intrastate revenues must be two sides of the same coin. And if a state's universal service methodologies do not recognize this, they are in conflict with federal law. MetroPCS is incorrect. The other side of the coin of MetroPCS's intrastate revenues is not its California intrastate revenues. The other side of the coin are the intrastate revenues across all 50 states. And let me demonstrate this with a hypothetical example. Let's say a wireless carrier has $100 million total revenue in the country. It uses its books and records to report to the FCC that it has $25 million in intrastate revenues subject to the federal surcharge. Thus, its allocation is 25% intrastate and 75% intrastate. Now, that 75% intrastate applies to all 50 states, not to individual states. Individual states may vary. And in fact, California, as the largest, the most populous state in the country, is likely to have a higher percentage of calls that are within the state, a higher percentage of intrastate revenue, as opposed to a smaller state or a state, say, on the Eastern Seaboard, where people call across state lines to make dinner plans or to call their supervisor at Thus, federal intrastate revenues and California's intrastate revenues need not be two sides of the same coin to avoid federal conflict. And in fact, logically, they simply are not two sides of the same coin. But for a customer in California, you can't have more than 100%, right? So I'm a little bit confused. I mean, if the intrastate in California is 80%, then there is going to be some double counting, right? Because the interstate would be, if it's, say, 25%, and you've got 80%, now you're at 105%. Well, again, that 25% is applicable to all 50 states. From the federal mechanism, we don't know what the intrastate portion is within California. But we know that they're, well, if they're charging for 25% intrastate, I mean, are you saying that, I mean, how would a carrier avoid paying a double counting if the intrastate in California puts you above the, it gets you to over 100% when you add it to the federal? Well, really, we don't know what the percentage is within California. And I think You mean the percentage of the national? The percentage of intrastate revenues within California. The federal universal service mechanisms never determine that. The district court made They just have a global sum? Across 50 states. And the district court made the same logical mistake. It said that the CPUC's methodologies deprived carriers of the ability to treat as intrastate the same revenues they treat as intrastate for the federal universal fund. However, the federal universal service mechanisms never determine what the carrier's intrastate revenues are in each individual state. They determine what it is across all 50 states. But we don't know what it is for each state according to the federal mechanism. So we don't know, you know, that 25, if it's 25% intrastate, that doesn't mean that it's 75% intrastate for California. We don't know that from the federal mechanisms. But if they have to pay the 25% for the federal, then if the state number is higher than 75%, isn't there a double charge? I'm confused. I'm still confused about how there isn't a double charge. Well, not necessarily. Because, again, we don't know what the assessment is for each individual state. You know, it might be, it might be a- But it doesn't vary state to state, does it? I thought- Yes, it does. Can you explain that then? I didn't understand that. I thought the federal had these different formulas that were not going to vary state to state. Well, the federal has one formula for the federal intrastate revenues that it collects across all 50 states. Right. And so if that says 25% needs to be considered intrastate and we're going to put fees on that, then that's the same in all the states at that point for that carrier. It's 25%, right? Well, the federal universal service mechanisms determine what the federal government should get on its surcharges. And it determines that assessment for the federal government. It never determines what each individual state should be. I understand that. But once they say you pay 25%, you know, there are three options and you choose one, whatever it is, whichever one, you end up at 25%. Once they're paying that, they're going to pay it in all the states, right? It's not going to be lower in California. Well they're paying, they're paying for their federal, for the federal surcharges. Right. State surcharges are different. They're a different system. You know, it could be, you know, across all 50 states, it might be 80% in California and 70% in Texas. We don't know that. We just don't have that information. Not from the federal universal service mechanisms. But within California, if the federal amount is 25% and California charges 80%, uses 80%, now you've got at least some portion that's essentially being double fined. It's the 5% overlap between the 25% and the 80%. And why doesn't that put the prepaid carrier at a disadvantage to other kind of carriers who have more options about how to calculate? It seems like the problem is this like neutrality principle that you're going to butt up against that, aren't you? Well competitive neutrality requires that we treat similarly situated entities the same. The FCC developed the concept of competitive neutrality from the universal service statute, which requires equitable and non-discriminatory contributions. But my understanding was it's equitable across, I mean, similarly situated, but that could be prepaid and postpaid. It could be prepaid and postpaid. It also could be direct sellers and indirect sellers. And so why wouldn't this disadvantage the prepaid sellers compared to the postpaid sellers? Well, within the regulatory system, there may be disadvantages depending on how people operate their business. California has chosen to treat all direct sellers and indirect sellers the same. So if we had a different system, we might be disadvantaging direct sellers and indirect sellers. And MetroPCS recognizes that. MetroPCS's preference is that we treat indirect sellers and direct sellers differently. And that would place a disadvantage. Well, I'm not sure. Well, we can ask your opposing counsel, but I'm not sure I understood them to say that. I mean, they're basically just saying, use the same formulas as the federal government for everyone. In their brief, they recognize that you can treat differently situated people differently. And their suggestion is that indirect sellers and direct sellers may be treated differently. And they say because direct sellers and indirect sellers are not similarly situated. And they say that's okay. So California's Prepaid Collection Act decided to go to a point-of-sale system and also to direct sellers similarly. You know, so we're trying, in that case, California is attempting to establish neutrality between direct sellers and indirect sellers. That's the way its regulatory scheme was developed by the California prepaid. You're saying direct and indirect sellers of prepaid services. Of prepaid services. But I understand their concern to be disadvantage of prepaid versus postpaid. Well, that might be their concern. Our concern as a regulatory agency is to try to treat similarly situated entities the same. Postpaid and prepaid do have differences. And what are the differences that justify treating them differently? Well, for prepaid and postpaid, postpaid services, you can tell what, because it's after the services are rendered, you can tell which of those calls are interstate and which of those calls are interstate at the moment, you know, before the billing happens. And you can apply the actual numbers at the point-of-sale, which happens postpaid. You can't do that prepaid because... But couldn't you do an equivalent thing with prepaid by doing an average of the last three months or something, looking at what people actually called? You could do that, or you could do the system that California's Prepaid Collection Act did, which was to establish an average across the prepaid wireless industry. And that is an acceptable methodology. It's equitable and non-discriminatory. It treats similarly situated entities the same. Well, I guess the question is, are postpaid and prepaid similarly situated entities? To the California's Prepaid Collection Act, they are not, because... That's the question we're here to figure out, whether that's okay or not, right? Yes. And it is okay. It is not preempted by Congress or by the FCC. Because California's established a point-of-sale mechanism, then prepaid and postpaid are not similarly situated. They're differently situated. And we've established mechanisms to try to get a good assessment of interstate revenues. If it pleases the Court, I would like to turn to the FCC's orders now. Okay. The District Court misread three FCC orders. Finding that read together, they placed certain limitations on the state universal service methodologies for wireless services. However, in only one of these orders, the 2010 Universal Service Declaratory ruling, that the FCC preempts state surcharge methodologies, but for VoIP services only. And in fact, the FCC explicitly stated that its restrictions on state surcharges did not apply to wireless services. If we were to apply the District Court's reading of the Universal Service Declaratory ruling to wireless services, it would force states to accept from wireless providers a gross undervaluation of interstate revenues. And let me demonstrate why this is so. Let's say a wireless provider adopts the FCC's safe harbor to report their wireless interstate revenues. The FCC set the wireless safe harbor not as a true indicator of interstate revenues. Rather it was set at the highest level of interstate revenues reported by any wireless provider in the FCC's evidentiary record. Thus, according to the District Court, every state must accept as an assessment of interstate revenues the lowest percentage of interstate revenues that the FCC had for any wireless provider in its record. This would not only dictate gross inaccuracy onto the states, greatly reducing its surcharges, it would completely eliminate discretion given to states to develop their own universal service rules. And that discretion was given by the Federal Universal Service Statute. Now that's just a quick... For postpaid though, do you let them use the flip side of the federal number? We, yes. So I guess I just get back to this problem that it seems like you're treating postpaid and prepaid differently. Postpaid and prepaid are treated differently. Because you, I mean, you could make the same argument. Somehow it's okay as to postpaid that it's the highest possible number and not the actual number. You accept that there. So I just am not quite understanding what the basis is for the differential treatment between the two. Yes. And actually I will have to check. I'm not sure if they actually accept the inverse of the safe harbor. I thought they did from my understanding, but it's very complicated. Yes, it is complicated. I do know the postpaid allows them to use their books and records to establish their revenues or traffic studies. But you don't know whether the safe harbor is an option. I actually, I do not recall. Do you want to save some time for rebuttal? Yes. Yes, I'll save, unless you have other questions, I will save the rest of the time for rebuttal. Thank you. Please, the court. My name is Peter Karangia for Metro PCS. Can you keep your voice up? I beg your pardon? Oh, sorry. Yes, of course. Judge Friedland, you're exactly right. There is a significant competitive neutrality problem here as between prepaid and postpaid. And I would like to identify what I think is a red herring, which is the CPUC's counter-argument. Hey, we are doing things equally because we are treating indirect sellers equally to direct sellers. And that's a red herring for a couple of reasons. First, it doesn't get around the fact that competitive neutrality still requires neutrality between prepaid and postpaid. And I'll get to how those are functionally identical services. But another reason it's a red herring, and this is in our brief, is that indirect sellers, Walmart, Best Buy and others, they don't have the same rights under the federal regime. They're not telecommunications carriers. There is no right under the federal statutory scheme and regulatory scheme for them to rely on the FCC's methodologies. But for carriers, prepaid carriers such as Metro PCS, they are telecommunications carriers so they do have those rights that the FCC has recognized. So, I do think it's a bit of a deflection on the CPUC's part to say, hey, let's not look at prepaid versus postpaid. Let's look at indirect versus direct. And that was a really fundamental problem with the resolutions because they never really grappled with the problem of competitive neutrality. And indeed, there's an irony here. When the CPUC was commenting on the bill that became the Prepaid Act, the CPUC said, wait a minute, this is a real problem. This statute is going to require disproportionate contributions. It's going to hit the prepaid folks the hardest. And of course, the CPUC acknowledged that the prepaid folks are those who you would least want to hit the hardest because they tend to be lower income and minority populations who are very much attracted to the flexibility of prepaid service. So we do think that's a red herring. Now, there was another error, I believe, in Mr. Gallardo's argument where he was trying to counter our central theme, two sides of the same coin. Now, two sides of the same coin, I don't need to repeat, is inherent in this court's decision in the Hawaiian Telephone Company case. It is a constant leitmotif in the FCC's declaratory ruling. And for another thing, it's just logical. As Judge Freeland was pointing out, if you're looking at $100 of revenue and you say $70 are interstate, well, it's logical. That's $30 are intrastate. Now, Mr. Gallardo, I think what he was arguing was, well, wait a minute. That doesn't actually work because you have many different states. Now, I think the reason that argument is erroneous is that the FCC has pointed out that the states have figured out themselves how to coordinate where a call is originated and where it's terminated among the states. And this is referenced in the declaratory ruling. And I'd point the court to paragraphs 19 to 21 of the declaratory ruling and footnotes 57 to 58. And what the FCC said there is, we recognize that in the wireless context, states have made considerable efforts to avoid double counting amongst themselves. So the FCC gave an example. And it said, look, this would be a problem if it happened. Let's say you have a service provider subject to a 35.1% assessment in State A and a 35.1% assessment on the same revenues in State B. And what if that's on top of 64.9% at the federal level? And what the FCC went on to say is, well, that would be a real problem. But you know what? We tend not to see that as a problem because the states have figured out how to coordinate among themselves. So I think that central effort by Mr. Gallardo on behalf of the CPUC to push back against the two sides of the same coin really is unavailing. So if I understand it correctly, the real point of disagreement is whether prepaid and postpaid have to be treated the same for neutrality principles. And so what is your best support for your position that they do have to be treated the same? Absolutely, Your Honor. For one thing, they're functionally identical services. You get a prepaid plan like Metro PCS, what can you do? You can call intrastate. You can call interstate. You can do text messaging. So it sounds like you're making an argument about why they should be treated the same and asking us to announce that. But is there any existing authority that already tells us that they have to be treated the same? It is true that the FCC has not directly pronounced that these are functionally identical services. But we don't think that's necessary. The FCC has, as Mr. Gallardo acknowledged, repeatedly stressed competitive neutrality and the definition of competitive neutrality is this. You should not unfairly advantage or unfairly disadvantage one provider over another nor should you unfairly advantage or disadvantage one technology over another. Now, as the District Court correctly recognized, prepaid and postpaid services offer the same things. You can call, you can text, you can go online. What is the difference? Are the providers usually the same? I think this might be outside the record. I don't know whether I could have figured this out. But does Metro PCS offer prepaid and postpaid? It does not. And that's why this really hits our client quite severely and its customers. Because unlike some, and I believe AT&T has both, I mean, we all know that AT&T has a postpaid line of wireless business. I believe it also has a prepaid line of wireless business called Cricket. Metro PCS, however, is exclusively prepaid. And not only that, Metro PCS is exclusively direct sales. So here we have a regime that the CPUC has constructed. Is Metro PCS the only company in that situation? I'm not 100% sure of the answer to that, Your Honor. I believe that many of the large carriers have prepaid lines of business, such as in addition to AT&T, Verizon has a prepaid brand. Sprint has a prepaid brand called Boost. But of course, as we know, Sprint at the higher level corporate structure also offers postpaid. Because those companies are in a sort of an interesting situation that to the extent that prepaid is disadvantaged, at least they get a benefit of the postpaid. One might think that. But it doesn't seem like your client is in that situation. It doesn't help us. It certainly doesn't help us. And the other thing I would point out on that is, and I'm not going to get into the numbers because this is confidential information, but Metro PCS has a substantial share of the California market. So it hits us particularly hard and it hits our customers particularly hard. Remember, Your Honor, as the CPUC acknowledges, under the California regime, and this predates the Prepaid Act, California insists that these end-user surcharges be paid by the customers. So this hits our customers. It makes it harder for us to compete against postpaid. And to Your Honor's question, is there any difference? Well, there is a difference, and that is just when you pay. Let me ask you this. Is it possible that given Metro PCS's unique status, as you just sort of articulated a minute ago, is it possible that, you know, the scheme is just as applied to Metro PCS as problems? That's an excellent question, Your Honor. Because the district court enjoined the whole thing. Agreed. Two points. First, I'm actually not sure, and I apologize for not knowing about the other companies. I'm not sure it's unique. Certainly, it affects our company. I'm familiar with our company's model. I'm familiar with AT&T's and Verizon's. I'm not familiar with every other prepaid provider, and there are a number. So it is possible, based on the record as I understand it, and I think this isn't even reflected in the record, Your Honor, whether this regime disadvantages other carriers. Now, there is a practical issue here as well. Did they join in this litigation at all, or did they? The litigation is only Metro PCS. Did they submit any kind of amicus brief? Sprint did submit an amicus brief in the district court. On which side? On ours. There were no amicus briefs filed in favor of the CPUC. The CDTFA, which is the tax authority, filed effectively an amicus brief. It was a letter basically saying we agree with how the CPUC interprets this statute. The CDTFA did not weigh in at all on the preemption problem. On our side, we had Sprint, as I mentioned. We also had, and we have again before this court, some public interest organizations who have expressed serious concerns about how this regime disadvantages minority populations who rely on prepaid service to a considerable extent to get access to the Internet. Let's remember, Your Honors, getting Internet access through Comcast or some wireline provider for many people is not an option. That can be economic, and it can be where they live. One of the significant advantages of prepaid service is it allows folks who may have difficulty getting online to use their phones as their sole means of connecting to the Internet. And that's a point made in the amicus brief. The district court didn't do an as-applied analysis. Is that correct? The district court did not. You're right, Your Honor. Nor did the CPUC make any effort to guide the district court toward one. And on the contrary, Your Honor, the CPUC actually made the following argument. Well, Your Honor, if you're inclined to strike down these resolutions, the whole statute has to go down with them. Right. That was the CPUC's interpretation. And indeed, as you will have seen from the briefs, Your Honor, we made an effort basically to give the court a path to not striking down the statute but to strike down the resolutions. I will concede there are some problematically worded provisions in that statute. And we thought we had a reasonable saving construction of the statute that we proposed to the district court. Now, the district court looked at that and it said, well, the CPUC wants me to strike down this whole statute. And the CDTFA, that's the tax authority, they agree with the CPUC's interpretation. So, okay, I'm going to strike down the statute as well. We have not challenged that. And to Your Honor's question, I think there is another practical issue here, which is, of course, we are now looking at a statute that had expired anyway. So I think for multiple practical reasons as well, it doesn't really make any sense to try to sort of resuscitate the statute if we all agree that the CPUC's resolutions are preempted, which we firmly believe they are. So I have a question on one of the arguments in your brief that was sort of maybe a smaller argument, which was that the Mobile Telecommunications Sourcing Act, so 4 U.S.C. 123b, preempted the CPUC's resolutions. But when I tried to read that law, it looked like it had an exemption for universal service surcharges, that 4 U.S.C. 1116b-5 said that it applies to everything other than Section 254 and then 254 is about these universal surcharges. So am I missing something? Is there a way? I think that that... I just don't understand how this could be preempted when it seems like there's a carve-out. Yes. So I think that that is referring to Federal universal service surcharges. If Your Honor can remind me which particular portion of it is, I do. It's a lengthy statute. Well, so it's 4 U.S.C. 1116b-5 then refers to what seems to be 47 U.S.C. 254. Yes. So, yes, obligations under Section 254. We understand that to refer to the FCC's federal contribution obligations. So in other words... But it talks about a state may adopt regulations not inconsistent. I mean, it talks about a state, so I don't... Okay, I guess your answer is you read it as only about... We read it as only federal and I would just note parenthetically the CPC has not made any argument under that provision. Yeah, I was going to ask them about that too. But there are multiple grounds here. I mean, we've sort of given the Court a menu of options. We firmly believe that the District Court was correct in the pivotal rationale, which is, look, the FCC wanted to create a framework of flexibility. It recognized it is not easy and this is a point the CPC has made to divvy up the revenues into interstate versus intrastate. You know, some carriers have different types of businesses. They track different information. So the FCC wanted to give that flexibility. Can I ask you a question about this mootness thing that's lurking out there? So the statute is expired, but it seems like they want to go back and charge your client more money because your client hasn't paid this money yet. It's not like you're asking for a refund. It's a future idea that you might have to pay more? That is correct, but I want to be precise. We have collected the surcharges and remitted them on what we understand is the proper surchargeable base. That's to say, intrastate telecommunications service. We haven't just ignored this. Right, right. But then they think you owe more. They think we owe more. And what I don't really understand is they haven't really tried to get that money. I mean, you haven't really made an argument that they waived it or it's too late, but is there such an argument that we should be worried about? That's a great point, Your Honor. I mean, I'll just say candidly we've had a hard time pinning them down on that. And as you may have inferred from our brief, you know, for one thing, we had to give the court a two-part answer because we didn't know what their position was. And our real concern is mootness combined with muncingware, which is, you know, what if we say, sure, you know, it's all moot, and then the court does what it often does. It says appeal dismissed as moot, we vacate the district court's decision, and then they come knocking on our door months from now or a year from now and say, hey, you know, you pay up those monies or you go to your customers and get those refunds. So, you know, we have a real concern about that, and the CPUC has not, at least in our conversations, been terribly forthcoming on what its position is. So our answer is twofold. If the CPUC will commit that it will not bring a retroactive claim for additional surcharges under those resolutions, let's say the 2017 and 2018 resolutions, fine, we'll agree. The case is moot. It's governed by the ACLU v. Mastow case we cite in our brief, and we can all go home. But if they will not give us that assurance, we have a real concern about the scenario I just described. Thank you, Your Honors. Hello again, Your Honors. So if you prevail here, are you going to go back after him? Well, we're required to by the California Constitution. The California Constitution requires state agencies to enforce California state laws unless an appellate court tells them that they are conflicting with federal law. But why haven't you done that already? I just don't understand why there isn't some enforcement action that has been going on in the meantime. Well, we could have. At a certain point, the district court's order came out, so we had to follow the district court's order. So currently, we cannot go after them because the district court has enjoined us from doing so. But there was a while when it was in litigation where you didn't send them a letter saying you're in default or something, as far as I can tell anyway. I don't understand really how this much time has gone by without an actual enforcement and then later you're going to try to do it later. Sometimes enforcement doesn't happen immediately. These are dollar figures that the CPUC doesn't know. We have to rely on the carrier's reporting of the figures, and sometimes we audit them afterwards to determine if they are correct in their reporting of the figures. So given those circumstances, the CPUC decided to wait to see what would happen. And is there no statute of limitations or anything that would be a problem for you at this point? That is a good question, Your Honor. I'm sorry that I don't know exactly if there is one. Could you also speak to this question about the Mobile Telecommunications Sourcing Act and whether it exempts these kind of universal service surcharges? Because you didn't make this argument that there's an exemption, but it seems like there is, and I don't understand why you didn't make that argument. Yes, Your Honor, and you're correct. We should have made the argument. Well, we did make an argument that it was exempt based on the initial phrase of the section. But not based on what seems to be a full-out section saying that this is exempted. Yes, Your Honor. We should have made that argument, and you are correct. It refers to carving out charges pursuant to 47 U.S.C. 254. 47 U.S.C. 254F gives the States discretion to seek universal surcharges in support of universal service. So you are correct. And you read that as applying to States, not just Federal. Yes. 254F clearly gives States that discretion to seek universal surcharges. And also our argument was that the first phrase of that mobile MTSA sourcing act cited by MetroPCS exempt when exempt situations when a taxing jurisdiction if a taxing jurisdiction does not otherwise subject charges for mobile telecom services taxation California does subject mobile telecom services to taxation. So that's another exemption which we featured in our case. Okay. Is there a last point you wanted to make? Yes. I do want to address You're over your time, so make it... So I just want to address the issue of post-paid and pre-paid again. So we, you know the statutes implementing 254F Section 254 requires non-discriminatory treatment. It doesn't mean you treat everyone the same. Do you have any authority that says post-paid and pre-paid can be treated differently? There's no authority that says they must be treated the same. Seems like there's no authority either way that either side is pointing to on this. Not that I can relate right now. Okay. Thank you. Thank you. Thank you, counsel. We appreciate your arguments this morning and the matters submitted at this time. And that ends our session for today.
judges: Paez, Bea, Friedland